**DIAMOND ALKALI COMPANY, Appellant, v. COUNTY BOARD OF REVISION, Appellee.**

Board of Tax Appeals.

No. 17747. Decided January 22, 1951.

**ENTRY**

This cause and matter came on to be heard and considered by the Board of Tax Appeals upon an appeal filed herein under date of April 25, 1950, by the Appellant above named from a final order of the County Board of Revision of Lake County, Ohio, and denying a complaint theretofore filed by the appellant with said County Board of Revision requesting said Board to remove from the County Auditor's list of taxable real property and tax list duplicate of said County for the tax year 1948 certain items of property on the stated ground that such items were personal property and not taxable on the real property lists and duplicate of the County. The case was heard and submitted to the Board of Tax Appeals upon said appeal, the transcript of the proceedings of the County Board of Revision herein complained of, and upon the evidence offered and introduced by and on behalf of the appellant, in the hearing of the case before the Board and upon the Brief of Counsel for the appellant. No appearance was made for, or on behalf of, the County Board of Revision or by the County Auditor at this hearing.

The complaint filed with the County Board of Revision, other than the memorandum attached to and made a part thereof, is in words and figures as follows:

"To the County Board of Revision :      Complaint as to
Lake County                        :      Assessment of Real
Painesville, Ohio             :            Property

Comes now Diamond Alkali Company, a Corporation organized and existing under the laws of the State of Delaware and duly authorized to carry on business in the State of Ohio, and requests said County Board of Revision of Lake County, Ohio to remove from the County Auditor's list of taxable real property and duplicate for the tax year 1948 the following manufacturing equipment:

| Item | Appraisal Page No. | | Assessed Value |
|---|---|---|---|
| 1 | 12 - 16 Incl. | Pumps | $ 43,788 |
| 2 | 51 | 8 - Lime Kilns | 560,000 |
| 3 | 53 | 2 - Lime Kilns | 248,000 |
| 4 | 65 - 67 Incl. | Turbine Generators | 32,105 |
| 5 | 70 | G. E. Turbine Generator | 71,000 |
| 6 | 73 | Main Power Panelboard | 202,500 |
| 7 | 76 - 80 Incl. | Generators, Boilers and Steamlines | 1,329,325 |
| 8 | 83 | Water Treating Equipment | 3,000 |
| 9 | 85 - 86 | Water Softening System | 52,500 |

| 10 | 89 - 91 Incl. 1948 Additions | Boilers, Steamlines & Pumps | 183,032 |
|----|------|------|------|
| 11 | Page 43 | Refuse Conveyor | 7,920 |
| 12 | Page 47 | 1 - G. E. Generator | 14,400 |

$2,747,570

DIAMOND ALKALI COMPANY
/s/ W. A. Crichley

W. A. Crichley, Controller"

This complaint was denied by the County Board of Revision of said County by an order of said Board under date of March 6, 1950, which was certified to the appellant under date of April 1, 1950. This order of the County Board of Revision was apparently made without the offer of any evidence, documentary or otherwise, in support of or in connection with this said complaint.

Upon consideration of the case as same is submitted to the Board of Tax Appeals, the thought is suggested that there is some question as to whether the County Board of Revision was required or even authorized to consider and determine this complaint; and this, by reason of the fact that this complaint was not verified by oath as required by the provisions of §5601 GC. And in this connection it is suggested that the complaint might have been in better form if such complaint, properly verified, had set out the amount of the assessed valuation of the parcel or parcels of land on which such items of property were located, and the amount of the excessive valuation thereof, by reason of the fact, as claimed, that such items of property were personal property, and had requested the County Board of Revision to make an adjustment of the assessed valuation of such parcel or parcels by excluding therefrom the items of property here in question and the aggregate valuation thereof. This, in substance, was the form of the complaints in the several proceedings reviewed by the Supreme Court in the cases of **Standard Oil Co., v. Zangerle, County Auditor, 133 Oh St 33,** and **State, ex rel. O'Connor v. Austin, County Auditor, 140 Oh St 7.** However, no question was made as to the legal sufficiency of this complaint, either as to its execution, form or content, on the hearing of the case before the County Board of Revision; and no question is here made by any of the parties in interests with respect to this matter. In this situation, and by reason of the fact that the County Board of Revision apparently determined said complaint on its merits with respect

to the questions thereby presented, this Board, giving effect by analogy to the rule noted in the case of **Drake v. Tucker, 83 Oh St 97,** and in many subsequent decisions of the Supreme Court of this State, does not feel it can do otherwise than to determine the questions herein presented on the record and evidence heard before it.

It appears from the evidence in this case that the items of property here in question are component parts of an integrated plant owned and operated by the appellant company at or near Painesville, Ohio, in which plant it manufactures alkali products, heavy chemicals, cement, coke, chromate products, chlorine and other related products. The plant property extends for about a mile along the shoreline of Lake Erie and comprises about 640 acres of land upon which have been erected and constructed about 75 buildings of various sizes and dimensions in which the activities of the company are carried on. The pumps referred to as Item 1 of the complaint are ten in number and are housed in a building along the lake front. These pumps or pump units which are set on separate foundations and each of which weighs from 5 to 7 tons, are used for the purpose of pumping water from the lake into the plant where it is used for various processing operations; and a part of such water is tapped off and is forced at extremely high pressure by certain other pumps, not here in question, through wells to salt deposits about 1900 feet below the surface of the ground, and by means of which salt brine is brought to the surface for use in the manufacture of many of the company's various products. One or more of the pumps here in question are used in connection with the low pressure boilers in the plant, referred to as Item 10 of the complaint. All of these pumps are used solely in connection with the various operations of the plant as a whole; all of them are readily removable from the several foundations on which they are placed. Each of the lime kilns, ten in number, which are referred to as Items 2 and 3 of the complaint, is a large vertical steel shell 22 feet in diameter and 80 feet high. The steel shell is five-eighths of an inch thick and is lined on the inside by refractory brick and sand about 23 inches thick. The weight of this structure rests upon the kiln foundation through a number of supporting columns which are fastened to the foundation. The lime is charged into the kiln at the top through a bell, as is the coke, by means of which and of a draft of air from the bottom of the kiln the lime is burned as it descends in the kiln. From the evidence it appears that the refractory brick in the kiln have to be removed and replaced at intervals; and that the whole

kiln is readily removable by taking the same down from the top. It likewise fairly appears from the evidence that these kilns and the burned lime products therein are used solely in the manufacture of the end products produced at this plant. Some of the boilers referred to in the complaint are low pressure units while most of them generate steam at extremely high pressures. The low pressure boilers are standby units which are used when one or more of the other boilers are, for any reason, not in use. The high pressure boilers generate steam for use in steam turbine operated generators and pumps; the exhaust steam from which turbines, which is still at substantial pressure, is used for other operations in the plant, and an extremely small portion of which is sometimes used at low pressure for the purpose of heating the plant and the several buildings thereof. Each and all of these boilers are readily removable from the several foundations on which they are set. As to the generators referred to in the complaint some of the same, as above noted, are operated by steam turbines. These generators are used for the purpose of producing electric power which is entirely used by the appellant company in its manufacturing operations at this plant. Some of these generators are motor operated; and these generators are used solely for the purpose of converting alternating current to direct current. The turbine generators generate alternating current, electric power which has to be changed to direct current for use in an electrochemical plant of this kind. These generators, like the other items of property above referred to, rest on their several foundations and are readily removable. The main power panelboard, noted as Item 6 in the complaint, is a part of the electric power distribution system of the plant; and is used solely in connection with the operation of the plant. From the evidence, it appears that the whole of this panelboard is removable with the exception of certain conduits in the wall and in the concrete floor. Although such conduits cannot be removed without injury to that part of the building, they are absolutely of no value whatever to the building as real property separate and apart from their use in carrying the electrical wiring used in the operation of the plant. The use of the water treating and water softener equipment, referred to as separate items in the complaint, is, perhaps, sufficiently indicated by the name. And the refuse conveyor, likewise referred to as an item in the complaint, is used for the purpose of carrying away seaweed, leaves, and other debris after the same has been taken from the water by the equipment above referred to. From the evidence in the case, it appears that these items of property like some of the more ponderous items above referred to are readily removable.

With respect to each and all of the items of property noted in the complaint filed by the appellant with the County Board of Revision, it may be said that same were erected and installed on the premises solely for use in the manufacturing operations carried on by the company at this plant; and in no case were such items of property erected or installed as accessions to the real estate as such. And in this view, none of the items of property here in question can be considered as an improvement on land within the provisions of **Section 2 of Article 12, of the State Constitution** or within the purview of §5388 **GC.** In this situation, it is apparent that by **Secs.** 5386 and 5388 **GC** and related sections in General Code, provision is made for the taxation of this property as implements used in manufacturing and as personal property. And inasmuch as the taxation of these items as implements used in manufacturing and as personal property has been thus specially provided for, they are excepted from the provisions of §5322 **GC,** which might otherwise, conceivably, have the effect of making some of these items real property for purposes of taxation.

With respect to the question here presented, the several items of property here in question cannot be distinguished on principle from that under consideration by the Court in the cases of **Zangerle, Auditor, v. Standard Oil Company of Ohio, 144 Oh St 506; Standard Oil Company v. Zangerle, Auditor, 144 Oh St 523; Zangerle, Auditor v. Republic Steel Corp., 144 Oh St 529;** and **Roseville Pottery, Inc., v. County Board of Revision of Muskingum County, 149 Oh St 89,** wherein the several items of property involved in these cases were held to be personal property for purposes of taxation. The decisions of the Supreme Court in the several cases above noted were followed by the Board of Tax Appeals in its recent decision in the National Tube Company Case No. 13164 on the docket of this Board.

On the considerations above noted the Board of Tax Appeals feels that the items of property here in question were and are personal property for purposes of taxation, and that, for this reason, the County Board of Revision of said county erred in denying the complaint filed by the appellant with said Board; and it is by the Board of Tax Appeals considered and ordered that the order of the County Board of Revision denying said complaint, be and the same hereby is reversed.

**Sec. 5611-1 GC** provides that in the case of an appeal from a decision of a County Board of Revision the Board of Tax Appeals shall ascertain and determine the true value in money

of the property, the valuation of assessment of which as determined by the County Board of Revision is complained of, and shall determine the liability of the property for taxation, if that question is in issue. The Board of Tax Appeals has determined here in that the items of property here in question are personal property and are not taxable as a part of the plant real estate; and it follows that the valuation of this property cannot be legally included in the building valuation of the plant property or of the parcel or parcels comprised in this plant. Inasmuch, however, since there is no information in the complaint or otherwise in the transcript, or in the evidence in this case as to the assessed land and building valuation of the plant property for the tax year 1948, this Board is unable to determine the taxable land and building valuation of the plant and of the parcel or parcels comprised therein by excluding from the assessed building valuation of the plant for said tax year the valuation of the items of property here in question which are found to be personal property and not taxable as real estate. In this situation, it is by the Board of Tax Appeals further considered and ordered that this case be remanded to the County Board of Revision and to the County Auditor to the end that said County Auditor may determine and reassess the land and building valuation of the appellant company's real estate in this plant by excluding from the assessed building valuation of the plant property for said tax year the valuation of the several items of property noted in the appellant's complaint, which items, as above indicated, are herein found to be personal property and not taxable on the real property list and duplicate of the County.

I hereby certify the foregoing to be a true and correct copy of the action of the Board of Tax Appeals of the Department of Taxation, this day taken with respect to the above matter.

Joseph D. Bryan
Secretary